Peter FELDMAN, Plaintiff
Below, Appellant,

v.

Rory J. CUTAIA, Steven J., Kumble, Jon-
athan, Lawrence, James T., Raymond,
Llewellen, Werner, William Hitch-
cock, Leonard V. Sessa and J. Todd
Raymond, Defendants Below, Appel-
lees.

No. 466, 2007.

Supreme Court of Delaware.

Submitted: April 8, 2008.
Decided: May 30, 2008.

Matthew E. Fischer, Esquire, Timothy R. Dudderar, Esquire (argued) and Berton W. Ashman, Jr., Esquire, Potter, Anderson & Corroon, LLP, Wilmington, DE, for appellant.

Stephen E. Jenkins, Esquire (argued), Richard L. Renck, Esquire and Andrew D. Cordo, Esquire, Ashby & Geddes, Wilmington, DE, for appellees, Rory J. Cut-

aia, Jonathan Lawrence and J. Todd Raymond.

Vernon R. Proctor, Esquire, Proctor & Heyman, LLP, Wilmington, DE, for appellees, Steven J. Kumble, James T. Raymond, Llewellyn Werner, William Hitchcock, and Leonard V. Sessa.

Before STEELE, Chief Justice, HOLLAND and BERGER, Justices.

HOLLAND, Justice:

The plaintiff-appellant, Peter Feldman, appeals from a final judgment entered by the Court of Chancery following its issuance of a Memorandum Opinion and Order. The Court of Chancery dismissed all fourteen counts of Feldman's Third Amended Complaint finding that the claims therein were solely derivative in nature. Applying this Court's holding in *Lewis v. Anderson*,[1] the Court of Chancery held that Feldman lacked standing to pursue those derivative claims following a third-party merger (the "Merger") in which all of his stock of the nominal defendant, The Telx Group, Inc. ("Telx" or the "Company"), was cashed out.

In this appeal, Feldman's sole argument is that the Court of Chancery erred in dismissing Count XIII of the Third Amended Complaint. In that count, Feldman alleges that he received inadequate consideration from the Merger because of stock options previously issued to three of the defendants-appellees. According to Feldman, the allocation of the Merger consideration to those stock options directly harmed him because he was paid less for his shares in the Merger than he would have been if the options had not existed.

█ Relying upon this Court's decision in *Tooley v. Donaldson, Lufkin & Jenrette,*

---

1. *Lewis v. Anderson,* 477 A.2d 1040, 1049 (Del.1984).

*Inc.,*[2] Feldman contends that his claim in Count XIII was an individual one and not derivative in nature. Feldman submits that Telx's directors had an affirmative duty to reconsider the validity of the stock options at the time of the Merger and their failure to do so gave rise to a separate and direct claim of harm. The appellees argue that, following this Court's landmark decision in *Tooley,* except in the inapplicable limited circumstances involving controlling stockholders, described in *Gentile v. Rossette*[3] and *Gatz v. Ponsoldt,*[4] a claim that stock options have been wrongly issued to management states a claim for waste and is solely derivative in nature.

The Court of Chancery characterized Feldman's contention that Count XIII states a direct claim as "a bootstrap argument." The Court of Chancery concluded that the alleged diminution of Feldman's share of the Merger proceeds in Count XIII are the same damages that flow from the alleged harm under the predicate derivative claims in those counts of the Third Amended Complaint that challenged the validity of the stock options. The Court of Chancery held that Count XIII was a creative but unsuccessful attempt to recast a derivative claim as a direct claim. We have determined that the judgment of the Court of Chancery must be affirmed.

### Statement of Facts

Feldman is a former stockholder, officer and board member of Telx. When he left the Company in 2002, Feldman owned 1,499,574 shares of Telx common stock. In June and August 2004, after the Company effected a ten-for-one reverse stock split, Feldman sold more than 148,000 of his Telx shares, constituting 99.3% of his equity position, to Steven Kumble, one of the defendants. In that arm's length transaction, Feldman received $3.36 per share. Following that sale, Feldman retained 1,000 shares of Telx common stock.

The defendants-appellees, with the exception of Todd Raymond, were, until the Merger, members of the board of directors of Telx. Rory J. Cutaia, Jonathan Lawrence and Todd Raymond were also members of the Company's management. Cutaia founded Telx, and served as its CEO, President and Chairman of the Board. Todd Raymond was the Company's general counsel. Lawrence was the Company's CFO and COO. The remaining defendants served the Company as outside directors.

### Challenged Stock Options

The Third Amended Complaint, *inter alia,* challenged certain stock options issued to three of the defendants under the Company's 2003 Employee Stock Option Plan (the "ESOP"). The ESOP was adopted by the Telx board on February 5, 2004. The stockholders approved it at the Company's annual meeting on April 13, 2004. Feldman alleged that the options issued thereunder to Cutaia, Lawrence and Todd Raymond were invalid. Although almost all of the Company's employees received stock options pursuant to the ESOP, Feldman's claims are limited to the options issued to Cutaia, Lawrence and Todd Raymond. Those options are referred to in this opinion as the "Challenged Stock Options."

### Telx's Merger and Dismissal Motion

In September 2006, while this litigation was proceeding, Telx closed the Merger

2. *Tooley v. Donaldson, Lufkin & Jenrette, Inc.,* 845 A.2d 1031, 1033 (Del.2004).

3. *Gentile v. Rossette,* 906 A.2d 91, 99–101 (Del.2006).

4. *Gatz v. Ponsoldt,* 925 A.2d 1265, 1277–81 (Del.2007).

with GI Partners Fund II, L.P., and GI Partners Side Fund II, L.P. (together "GI"). The Merger was approved by over 92% of Telx's stockholders. In the Merger, all of the outstanding shares of Telx stock were acquired by GI for nearly $15 per share. In addition, all the holders of Telx options and warrants received the same per share consideration, minus the applicable strike price. In total, GI paid the Telx security holders in excess of $213 million in the Merger. Following the Merger, the defendants moved to dismiss Feldman's complaint because, as a result of the Merger, Feldman ceased to own Telx stock. The motion to dismiss asserted, based upon the continuous ownership rule of *Lewis v. Anderson*,[5] that Feldman had lost standing to pursue derivative claims on behalf of Telx.

### Count XIII Dismissed

After the defendants moved to dismiss on the grounds that the Merger had extinguished Feldman's standing to prosecute this litigation, Feldman filed a Third Amended Complaint and added Count XIII, the only count at issue in this appeal.[6] Count XIII alleges that the defendants breached their fiduciary duties by not reconsidering the validity of the Challenged Stock Options before approving the Merger agreement. The Court of Chancery rejected Feldman's argument that Count XIII stated a direct claim under *Tooley*,[7] and held that Count XIII is solely derivative in nature.

The Court of Chancery ruled that the alleged harm for which Feldman seeks relief in Count XIII is the same as the Company would have suffered from the invalidity of the Challenged Stock Options and, under *Tooley*, is derivative in nature. The Court of Chancery concluded Count XIII was an attempt by Feldman to avoid dismissal for lack of standing after the Merger by "creatively attempting to recast a derivative claim by alleging the same fundamental harm in a slightly different way...."[8] The Court of Chancery dismissed the entire proceeding, holding that the Third Amended Complaint's fourteen counts set forth only derivative claims. Under this Court's decision in *Lewis v. Anderson*,[9] Feldman lacked standing because derivative claims may be maintained only by stockholders who own shares throughout the litigation.

### Standard of Review

 The decision of the Court of Chancery granting a motion to dismiss under Court of Chancery Rule 12(b)(6) is reviewed by this Court *de novo*.[10] We must "determine whether the trial judge erred as a matter of law in formulating or

---

5. *Lewis v. Anderson*, 477 A.2d 1040, 1046 (Del.1984).

6. Counts VI through XII of the Third Amended Complaint, as in Feldman's prior complaints, alleged that the Challenged Stock Options are invalid. According to those counts, the Challenged Stock Options' issuance constituted a breach of contract; violated Title 8, § 157 of the Delaware Code, amounted to unjust enrichment of Cutaia, Lawrence and Todd Raymond, violated Telx's board's duty of good faith, and constituted waste. Feldman does not appeal from the Court of Chancery's ruling that the claims in Counts VI through XII were derivative and, therefore, cannot be maintained by him post-Merger.

7. *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del.2004).

8. *See In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 766, 771–74 (Del.2006) ("*J.P.Morgan*").

9. *Lewis v. Anderson*, 477 A.2d 1040, 1046 (Del.1984).

10. *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 438 (Del.2005).

applying legal precepts."[11] This Court, like the Court of Chancery, is required to accept the well-pled allegations of the Third Amended Complaint as true and draw reasonable inferences in favor of the plaintiff, Feldman. Nevertheless, conclusory allegations need not be treated as true, nor should inferences be drawn unless they truly are reasonable.[12] Dismissal is appropriate only after a judicial determination "with reasonable certainty that, under any set of facts that could be proven to support the claims asserted, the plaintiff would not be entitled to relief."[13]

### Merger Eliminates Derivative Standing

Twenty-four years ago, in the seminal case of *Lewis v. Anderson*,[14] this Court held that a corporate merger generally extinguishes a plaintiff's standing to maintain a derivative suit. In *Lewis v. Anderson*, as in Feldman's case, while the plaintiff was litigating a derivative action, the corporate defendant merged with an-

other company, and the plaintiff's stock was exchanged for that of the corporate defendant's new parent company.[15] In *Lewis v. Anderson*, this Court held that Title 8, section 327 of the Delaware Code,[16] when read *in pari materia* with the Court of Chancery Rule 23.1,[17] requires that a plaintiff not only be a stockholder at the time of the alleged wrongdoing, but that he maintain stockholder status in the corporate defendant throughout the litigation.[18] In *Lewis v. Anderson*, we held that since a derivative claim is a property right owned by the nominal corporate defendant, that right flows to the acquiring corporation by operation of a merger.[19]

It is now well established that a plaintiff may avoid dismissal of his derivative claims following a merger in only two distinct circumstances: where the claims asserted are direct, rather than derivative, or where one of the exceptions recognized in *Lewis v. Anderson* applies.[20] Feldman

11. *Id.*

12. *White v. Panic*, 783 A.2d 543, 549 (Del. 2001).

13. *VLIW Tech., LLC v. Hewlett–Packard Co.*, 840 A.2d 606, 610–11 (Del.2003) (quoting *McMullin v. Beran*, 765 A.2d 910, 916 (Del. 2000)).

14. *Lewis v. Anderson*, 477 A.2d 1040, 1049 (Del.1984).

15. *Id.* at 1042.

16. Section 327 states:
 In any derivative suit instituted by a stockholder of a corporation, it shall be averred in the complaint that the plaintiff was a stockholder of the corporation at the time of the transaction of which such stockholder complains or that such stockholder's stock thereafter devolved upon such stockholder by operation of law.

17. Rule 23.1 provides:
 In a derivative action brought by one or more shareholders ... to enforce a right of

a corporation ... the corporation ... having failed to enforce a right which may properly be asserted by it, the complaint shall allege that the plaintiff was a shareholder ... at the time of the transaction of which the plaintiff complains or that the plaintiff's share ... thereafter devolved on the plaintiff by operation of law.

18. *Lewis v. Anderson*, 477 A.2d at 1046.

19. *Id.* at 1044.

20. In *Lewis*, this Court set forth two exceptions in the merger context to its holding that only a current shareholder has standing to maintain an action that is derivative in nature: first, if the merger itself is the subject of a claim of fraud, being perpetrated merely to deprive shareholders of the standing to bring a derivative action; or second, if the merger is in reality merely a reorganization which does not affect plaintiff's ownership in the business enterprise. *Lewis v. Anderson*, 477 A.2d at 1046 n. 10; *see also Bokat v. Getty Oil Co.*, 262 A.2d 246, 249 (Del.1970); *Schreiber v. Carney*, 447 A.2d 17, 21–22 (Del.Ch.1982).

ceased to be a Telx stockholder following the merger with GI Partners. Therefore, the dismissal of his Third Amended Complaint must be affirmed unless this Court determines that there is merit to Feldman's contention that Count XIII states a claim for direct relief.

### Equity Dilution Generally Derivative Claim

In *Tooley v. Donaldson, Lufkin & Jenrette, Inc.,*[21] this Court set forth the analytical framework for ascertaining whether a cause of action is direct or derivative. In *Tooley,* we held that this determination can be made by answering two questions: "[W]ho suffered the alleged harm ... and who would receive the benefit of any recovery or other remedy ...?"[22] If the corporation alone, rather than the individual stockholder, suffered the alleged harm, the corporation alone is entitled to recover, and the claim in question is derivative.[23] Conversely, if the stockholder suffered harm independent of any injury to the corporation that would entitle him to an individualized recovery, the cause of action is direct.[24]

In Count V of the Third Amended Complaint, Feldman alleges that the Challenged Stock Options resulted in Telx issuing stock for inadequate consideration, and that his equity holdings in the Company were thereby diluted. A claim for wrongful equity dilution is premised on the theory that the corporation, by issuing additional stock for inadequate consideration, made the complaining stockholder's investment less valuable. In *Gentile v. Rossette,* this Court stated that dilution claims are "not normally regarded as direct, because any dilution in value of the corporation's stock is merely the unavoidable result (from an accounting standpoint) of the reduction in the value of the entire corporate entity, of which each share of equity represents an equal fraction."[25] In the absence of a controlling stockholder, "such equal 'injury' to the [company's] shares resulting from a corporate overpayment is not viewed as, or equated with, harm to specific shareholders individually."[26] The Court of Chancery dismissed Count V as a derivative claim for dilution and Feldman does not challenge that ruling in this appeal.

Count XIII alleges a breach of fiduciary duty by the Telx board for its purported failure to consider the validity of the Challenged Stock Options when it negotiated and approved the merger with GI Partners. The Court of Chancery held that

21. *Tooley v. Donaldson, Lufkin & Jenrette, Inc.,* 845 A.2d 1031, 1033 (Del.2004).

22. *Id.*

23. *Id.* at 1036 (citing with approval *Agostino v. Hicks,* 2004 WL 443987, at *7 (Del.Ch. Mar. 11, 2004) ("Looking at the body of the complaint and considering the nature of the wrong alleged and the relief requested, has the plaintiff demonstrated that he or she can prevail without showing an injury to the corporation?")).

24. *Id.* at 1039 ("The stockholder's claimed direct injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation.").

25. *Gentile v. Rossette,* 906 A.2d 91, 99 (Del. 2006); *see also Kramer v. W. Pac. Indus., Inc.,* 546 A.2d 348 (Del.1988) (holding the excessive issuance of stock options and payment of fees to executives to be derivative).

26. *Gentile v. Rossette,* 906 A.2d at 99; *see also Gatz v. Ponsoldt,* 925 A.2d 1265 (Del.2007). *Gentile* and *Gatz* both involved situations with a controlling shareholder and transactions that resulted in an improper transfer of both economic value and voting power from the minority stockholders to the controlling stockholder.

"[p]ursuant to *Tooley,* the harm flowing from the Telx directors' purported breach of fiduciary duty in Count XIII is the same type of harm that allegedly resulted from the options grants in the first place, *i.e.* a harm generated by corporate overpayment." The Court of Chancery observed that Feldman's creative attempt to recast the derivative claim for dilution in Count V, by alleging the same fundamental harm in a slightly different way in Count XIII, is disfavored.

In *J.P. Morgan,*[27] this Court rejected a plaintiff's effort to bootstrap the harm and damages causatively linked to a derivative claim onto what, according to that plaintiff, was an independently arising direct cause of action. In dismissing Feldman's Third Amended Complaint, the Court of Chancery relied upon the *ratio decidendi* of this Court's opinion in *J.P. Morgan.* The Court of Chancery concluded that in Count XIII, Feldman seeks to recast the alleged harm to the Company caused by the asserted overpayment to the holders of the Challenged Stock Options as harm to him directly.[28]

■■■■ Where all of a corporation's stockholders are harmed and would recover *pro rata* in proportion with their ownership of the corporation's stock solely because they are stockholders, then the claim is derivative in nature.[29] The mere fact that the alleged harm is ultimately suffered by, or the recovery would ultimately inure to the benefit of, the stockholders does not make a claim direct under *Tooley.*

In order to state a direct claim, the plaintiff must have suffered some individualized harm not suffered by all of the stockholders at large.[30]

■■■■ Count XIII does not, however, plead any facts from which either the Court of Chancery or this Court could conclude that the "failure" to reconsider the validity of the Challenged Stock Options when the Merger agreement was adopted caused Feldman harm separate and distinct from the alleged harm to the Company. The only harm· alleged in Count XIII is exactly the same that was allegedly caused by the invalidity of the Challenged Stock Options in the first place—the dilution harm asserted in Count V that is derivative in nature. The Court of Chancery properly relied upon our decision in *J.P. Morgan,* and concluded that "the damages allegedly flowing from the purportedly direct claim [in Count XIII] are exactly the same as those suffered by the corporation in the underlying derivative claim [in Count V], and thus the injury alleged in the complaint is properly regarded as injury to the corporation and not to the class."

### Count XII Derivative Under Kramer

Feldman's argument is inconsistent with this Court's holding in *Kramer v. Western Pacific Industries, Inc.*[31] *Kramer* was decided before *Tooley* and employed, in part, the "special injury" test for determining

---

**27.** *J.P. Morgan,* 906 A.2d 766, 771–74 (Del. 2006).

**28.** *Id.*

**29.** *Gentile v. Rossette,* 906 A.2d at 99 (holding that allegations of equal injury to all of a corporation's shares, and not visited on any specific stockholders individually, state a claim that is solely derivative in nature).

**30.** *Id.. See also Elster v. Am. Airlines, Inc.,* 100 A.2d 219, 222 (Del.Ch.1953) (holding that a claim was derivative where "[a]ny injury which plaintiff may receive ... would be equally applicable to all the stockholders....").

**31.** *Kramer v. W. Pac. Indus., Inc.,* 546 A.2d 348 (Del.1988).

whether a claim is derivative or direct.[32] Nevertheless, this Court has continued to rely upon other aspects of *Kramer* after *Tooley* because in *Tooley*, we explained why *Kramer* had been correctly decided:

> In *Kramer v. Western Pacific Industries, Inc.*, this Court found to be derivative a stockholder's challenge to corporate transactions that occurred six months immediately preceding a buy-out merger. The stockholders challenged the decision by the board of directors to grant stock options and golden parachutes to management. The stockholders argued that the claim was direct because their share of the proceeds from the buy-out sale was reduced by the resources used to pay for the options and golden parachutes. Once again, our analysis was that to bring a direct action, the stockholder must allege something other than an injury resulting from a wrong to the corporation. We interpreted *Elster* to require the court to determine the nature of the action based on the "nature of the wrong alleged" and the relief that could result. That was, and is, the correct test. The claim in *Kramer* was essentially for mismanagement of corporate assets. Therefore, we found the claims to be derivative. *That was the correct outcome.*[33]

In *Gentile*, we cited *Kramer* for the proposition that equity dilution does not generally constitute a direct harm, but, instead, a derivative one.[34] In *Kramer*,

the plaintiff also raised a post-merger challenge to options and other compensation that had previously been issued to management, claiming, like Feldman, that he received less in the merger because of the inclusion of the options in the merger consideration. This Court's decision in *Kramer* explains why Count XIII is derivative under the test in *Tooley*.

In *Kramer*,[35] the stockholder-plaintiff alleged that the individual defendants, who were members of the corporation's board of directors, had improperly diverted a portion of the merger proceeds to themselves in the form of stock options and golden parachutes paid out of the merger consideration. After the plaintiff lost his stock by operation of an all-cash merger, the Court of Chancery held that the plaintiff's claims were derivative in nature and dismissed them for lack of standing under *Lewis v. Anderson*.[36] This Court affirmed and rejected the plaintiff's argument that his claims were an attack upon the "fairness of the terms of the merger" and that the plaintiff was "wrongfully deprived of a portion of the Merger Sale proceeds." Instead, we held that the plaintiff in *Kramer* alleged neither harm to the stockholders separate and distinct from that suffered by the "corporation as a whole" nor a direct attack on the terms of the merger.[37]

In *Kramer*, our analysis recognized that claims of mismanagement resulting in a decrease in the value of corporate stock

---

**32.** In *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, this Court renounced the "special injury" test, i.e., whether the plaintiff has suffered an injury different from that suffered by shareholders in general, for determining whether a claim is direct or derivative. *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1038–39 (Del.2004).

**33.** *Id.* at 1038 (emphasis added) (footnote omitted).

**34.** *Gentile v. Rossette*, 906 A.2d 91, 99 (Del. 2006).

**35.** *Kramer v. W. Pac. Indus., Inc.*, 546 A.2d at 350.

**36.** *Id.* at 351.

**37.** *Id.* at 352 (emphasis and internal quotation marks omitted).

are derivative in nature, while "attacks involving fair dealing or fair price" in a corporate transaction are direct in nature.[38] Accordingly, we held that the plaintiff's claims that the individual defendants received excessive payments as a result of pre-merger transactions amounting to waste, which in turn depressed the price that the plaintiff received in the merger, fell into the former category and, as such, were properly dismissed under *Lewis v. Anderson.*[39] In *Kramer*, we concluded that the plaintiff's "claim of diversion of funds and excessive payments clearly does not rise to an attack on the merger itself sufficient for his suit to survive the merger."[40]

Feldman's claims in Count XIII, like the plaintiff's claims in *Kramer*, attack that portion of the Merger consideration received by Cutaia, Lawrence and Todd Raymond as a result of their pre-Merger ownership of the Challenged Stock Options. Feldman does not attack the Merger price or the process used by the Telx board in obtaining that price. He attacks only what he perceives as a failure on the part of the Telx board to reconsider the validity of the Challenged Stock Options and, therefore, the wrongful diversion of part of the Merger consideration to the holders of the Challenged Stock Options. As in *Kramer*, we hold that Feldman's attack on the validity of the Challenged Stock Options is derivative because it does not relate to the fairness of the merger itself and does not allege a harm that is distinct from that suffered by the "corporation as a whole." [41]

Therefore, Count XIII was also properly dismissed under *Lewis v. Anderson.*[42]

### Conclusion

Count XIII in Feldman's Third Amendment Complaint is derivative in nature under this Court's decisions in *Tooley*[43] and *Kramer*.[44] Therefore, pursuant to this Court's holding in *Lewis v. Anderson*, Feldman lacks standing to maintain this action.[45] The judgment of the Court of Chancery is affirmed.

---

**38.** *Id.* at 354.

**39.** *Id.* at 354–55.

**40.** *Id.* at 354.

**41.** *Id.* at 352.

**42.** *Id.* at 354–55.

**43.** *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del.2004).

**44.** *Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348, 351 (Del.1988) (stating that a direct injury, independent of the corporation, is required).

**45.** *Lewis v. Anderson*, 477 A.2d 1040, 1049 (Del.1984).