**JOE W. AND DOROTHY DORSETT BROWN FOUNDATION,**
**Plaintiff,**

v.

**FRAZIER HEALTHCARE V, L.P.; Frazier Healthcare III, L.P.; Frazier Affiliates III, L.P.; Trevor Moody; Alan Frazier; Steven Tallman; Guy Mayer; Nathan Every; and Jeffrey Nugent, Defendants.**

**Case No. A–11–CA–807–SS.**

United States District Court, W.D. Texas, Austin Division.

Aug. 27, 2012.

Cleveland Roswell Burke, Robert A. Summers, Hohmann, Taube & Summers, LLP, Austin, TX, Michael R. Davis, Tim P. Hartdegen, Hymel Davis & Petersen, Baton Rouge, LA, for Plaintiff.

Leslie C. Thorne, Haynes and Boone LLP, Austin, TX, Nicholas Even, Haynes and Boone, LLP, Dallas, TX, Clayton Basser–Wall, Wilson Sonsini Goodrich & Rosati, Austin, TX, Luke A. Liss, Terry T. Johnson, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, for Defendants.

## *ORDER*

SAM SPARKS, District Judge.

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants Nathan Every, Alan Frazier, Guy Mayer, Trevor Moody, Jeffrey Nugent, and Steven Tallman (collectively, the Directors)'s and Defendants Frazier Affiliates III, L.P., Frazier Healthcare III, L.P., and Frazier Healthcare V, L.P. (collectively, Frazier Investors)'s Motions to Dismiss [## 54, 55], Plaintiffs Chambers Medical Foundation, and Joe W. and Dorothy Dorsett Brown Foundation (collectively, the Foundations)'s Response [# 61] thereto, and the Directors' and Frazier Investors' Replies [## 67, 68]; the Foundations' Motion for Leave to File Supplemental Memorandum [# 64]; the Foundations' Motion for Leave to File Surreply [# 70], and the Directors' Response [# 71] thereto;[1] and the Foundations' Motion to Abate Scheduling Order Deadlines [# 74].[2] Having considered the documents, the file as a whole, and the relevant law, the Court now enters the following opinion and orders, granting the motions to dismiss.

## Background

This is the second motion to dismiss in this matter. Briefly, the facts underlying this case area as follows: The Foundations are non-profit entities, which support both academic and practical medical research, as well as other worthy concerns. The

---

1. The Motion for Leave to File Supplemental Memorandum [# 64] and Motion for Leave to File Surreply [# 70] are GRANTED.

2. The motion to abate is DISMISSED as moot.

Foundations are or were "major stockholders" of Ascension Orthopedics, Inc.2d Am. Compl. [# 51] ¶ 17. Ascension was a Delaware corporation, and Delaware law thus governs the substance of this suit. Ascension operated in one form or another for approximately twenty years, and issued several classes of stock, particularly: "Class A Common Stock, Class B Common Stock, Series A Preferred Stock, Series A–1 Preferred Stock, Series B Preferred Stock, Series C Preferred Stock, Series D Preferred Stock, and as of 2011, Series E Preferred Stock and Series E–1 Preferred Stock." *Id.* ¶ 18. At the times relevant to this case, the Foundations owned preferred shares from Series A–1, Series B, Series C, and Series D. *Id.* at 4 n. 1. In the event Ascension ceased to exist, distributions were in the following priority order: "Series E and Series E–1, Series D, Series C, Series B, Series A, Series A–1, Class A Common, and Class B Common." *Id.* ¶ 19.

Beginning in January 2010, and running through March 2011, one of the Frazier Investors [3] made a series of "bridge financing" loans to Ascension. These loans, with a total principal amount of $14.25 million dollars, had a term requiring a 300% return if Ascension merged with another company, and 10% annual interest. Two other shareholders, the Mayo Clinic and CMC Master Fund, also took part in the bridge financing, loaning $1.25 million and $750,000, respectively. It is unclear whether the Foundations were offered the opportunity to participate in these loans; the Court presumes they were not.

Shortly afterwards, Ascension exchanged the loans for a Class E series of preferred stock, which likewise had a 300% return clause in the event of a merger or acquisition, and a 10% annual dividend. Ascension also issued and sold a further offering E series stock, on the same terms, for an additional $1.75 million.[4] The total amount invested in Ascension was therefore approximately $18 million. The Foundations admit they were given the opportunity, in April or May of 2011, to participate in the full $18 million-worth of E series stock, based on their pro rata share of existing Ascension stock. Pls.' Supp. Mem. [# 64–1] at 2. The Foundations declined to do so. They object to whether they were given meaningful access because (1) their amount of participation was limited to their pro rata share; and (2) "the Frazier Directors and Frazier Investors, through their control of Ascension, had sole discretion to 'modify, amend, delay and/or withdraw all or a portion of the Debt Financing and/or accept or reject in whole or in part any prospective purchase of the notes and warrants.'" Pls.' 2d Am. Compl. [# 51] ¶ 37 (quoting Ex. 6, Letter of April 29, 2011).

Ascension was sold to Integra Lifesciences. The purchase price paid by Integra sufficed to cover, in whole or in part, the 300% return guaranteed to the Class E shareholders (including Frazier Healthcare V, L.P.) who had first priority, but did not extend to any other classes of stock, including those shares held by the Foundations. Plaintiffs assert the value of their own—apparently significant—investment in Ascension was destroyed as a result.

Defendants do not deny the Foundations received no share of the consideration from the sale to Integra, and admit the Foundations' shares in Ascension were extinguished by operation of the merger. However, they assert the Foundations

---

**3.** Frazier Healthcare V, L.P.

**4.** It appears that Frazier Healthcare V, L.P., Mayo Clinic, CMC Master Fund, and Ascension's founder, Dr, Jerome Klawitter (who was also a shareholder), all participated.

have again failed to state a claim for which relief can be granted, primarily because the Foundations' claims are derivative in nature, and the Foundations lost any standing to bring derivative claims on behalf of Ascension after the merger.

## Discussion

### I. Motion to Dismiss—Legal Standard

■ Federal Rule of Civil Procedure 8(a)(2) requires a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2). A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED.R.CIV.P. 12(b)(6). In deciding a motion to dismiss under 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.,* 14 F.3d 1061, 1067 (5th Cir.1994). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. Although a plaintiff's factual allegations need not establish the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," that must be performed in light of a court's "judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937. In deciding a motion to dismiss, courts may consider the complaint, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007).

### II. Application

The Court previously granted Defendants' motions to dismiss, but also gave the Foundations leave to file an amended complaint. Under their operative, Second Amended Complaint, they bring the following causes of action against both the Directors, and the Frazier Investors: (1) breach of fiduciary duties; (2) minority shareholder oppression; (3) conspiracy to breach fiduciary duties and oppress minority shareholders; (4) aiding and abetting same; and (5) unjust enrichment.

■ The Court can quickly dispense with all but the breach of fiduciary duty, and aiding and abetting breaches of fiduciary duty claims: the others are all either derivative in nature, or simply fail to state a claim, because they are not recognized causes of action under Delaware law. "Delaware does not recognize a cause of action for minority shareholder oppression." *Nightingale & Assocs., LLC v. Hopkins,* No. 07–4239, 2008 WL 4848765, at *4 (D.N.J. Nov. 5, 2008). "[Conspiracy] holds a third party, not a fiduciary, responsible for a violation of fiduciary duty." *Albert v. Alex. Brown Mgmt. Servs.,* Nos.

762–N, 763–N, 2005 WL 2130607, at *10 (Del.Ch. Aug. 26, 2005).

Accordingly, the Directors' and Frazier Investors' motions to dismiss are GRANTED as to the foregoing causes of action. Because the Foundations have had ample time to amend their pleadings (and have done so twice already), and because they have long been on notice of the Directors' and Frazier Investors' objections on these points, the Court DISMISSES the following claims WITH PREJUDICE, as to both the Directors and Frazier Investors: minority shareholder oppression; conspiracy to breach fiduciary duties and oppress minority shareholders; and unjust enrichment. The Court now turns to the remaining causes of action, which in fact represent the real substance of this lawsuit, and the pending motions: have the Foundations stated a claim for which relief can be granted, as to the allegations the Directors and Frazier Investors breached fiduciary duties to them, and aided and abetted each others' efforts to do so?

## III. Breach of Fiduciary Duty and Aiding and Abetting

■ The Court must first determine whether the Foundations' claims are direct or derivative. Under Delaware law, whether a stockholder's claim is direct or derivative in nature turns on a two-part test: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del.2004). Under the first part, in order to assert a direct claim, a plaintiff-shareholder must allege harm "separate and distinct from that suffered by other shareholders ... which exists independently of any right of the corporation." *Id.* at 1035.

Under the second part, the plaintiff-shareholder must demonstrate that he, not the corporation, would receive the benefit of any recovery or remedy. *Id.* at 1033.

■ Corporate merger generally eliminates a plaintiff-shareholder's standing to bring a derivative suit. *Lewis v. Anderson*, 477 A.2d 1040, 1049 (Del.1984). This is because the derivative claim is a property right of the original corporation, and the right shifts to the acquiring corporation once a merger is consummated. *Id.* at 1044. Thus, claims post-merger will generally be subject to dismissal, unless the plaintiff-shareholder can demonstrate either of "two distinct circumstances." *Feldman v. Cutaia*, 951 A.2d 727, 731 (Del. 2008). Those are: (1) "where the claims asserted are direct, rather than derivative," or (2) under two exceptions to the rule announced in *Lewis*. *Id.* The *Lewis* exceptions are: "first, if the merger itself is the subject of a claim of fraud, being perpetrated merely to deprive shareholders of the standing to bring a derivative action; or second, if the merger is in reality merely a reorganization which does not affect plaintiff's ownership in the business enterprise." *Id.* at 731 n. 20 (citing *Lewis*, 477 A.2d at 1046 n. 10).

Here, Ascension of course has been merged with Integra, and the Foundations have not made any showing under the *Lewis* exceptions. Thus, the issue remains whether their claims are direct or derivative.

■ Although it is a difficult question, the Court is persuaded the Foundations have failed to state a direct claim for breach of fiduciary duty, because the facts alleged do not fit within the narrow rule established by the Delaware Supreme Court in *Gentile v. Rossette*, 906 A.2d 91, 99–100 (Del.2006). In *Gentile*, the Delaware Supreme Court held shareholders have a direct cause of action when:

(1) a stockholder having majority or effective control causes the corporation to issue "excessive" shares of its stock in exchange for assets of the controlling stockholder that have a lesser value; and (2) the exchange causes an increase in the percentage of the outstanding shares owned by the controlling stockholder, and a corresponding decrease in the share percentage owned by the public (minority) shareholders.

*Gentile v. Rossette,* 906 A.2d 91, 100 (Del. 2006).

■ At first glance, the Foundations' claims would appear to fall within the *Gentile* rule. And, the Court does find the Foundations have adequately alleged the Frazier Entities acted in conjunction as a controlling shareholder. The Second Amended Complaint alleges, in exacting detail, that the three Frazier Entities collectively controlled Ascension. In particular, they held: "in excess of 80% of the Series D Preferred Stock, 85% of Series E Preferred Stock, and 95% of Series E–1 Preferred Stock." Pl.'s 2d Am. Comp. [# 51] ¶ 5. Furthermore, the Foundations have alleged the Frazier Investors, acting under the direction of their parent company, were indeed acting in concert, so as to collectively constitute a controlling shareholder. In particular:

> In the Private Placement Memorandum released in connection with the Series D offering, Ascension issued the following notice to existing shareholders: "[f]ollowing the Series D financing, the Corporation anticipates that its stockholder Frazier Healthcare, and its affiliates will control a majority of the combined preferred stock classes and, therefore, have effective voting control of the Corporation."

*Id.* ¶ 21 (quoting Ex. 1, Series D Private Placement Memorandum at 17).

The Foundations allege, and there appears to be no basis for the Frazier Investors to deny, that the Investors then indeed took control of the board of directors, placing their own appointees, including at least one principal of the Frazier corporate family, Alan Frazier, on the board.[5]

In addition, the Foundations point to the 2007 Annual Reports of the Frazier Investors. These reports are evidence the Frazier Investors were acting in combination, because they all refer to each other's investments in Ascension as "cross-over" investments, provide aggregated investment totals, and state the Frazier Investors have a "a combined 52.3% ownership position" in Ascension. *E.g., id.* ¶ 22 (quoting Ex. 2, 2007 Annual Report for Frazier Affiliates III, at 6). The Annual Reports hold out Directors Trevor Moody, Steve Tallman, and Alan Frazier as "Frazier Healthcare Board Representative[s]." *E.g., id.* (quoting Ex. 2, 2007 Annual Report for Frazier Affiliates III, at 17). Accordingly, the Court finds the Foundations have alleged sufficient facts to support an inference that the Frazier Investors operated as a controlling shareholder.

However, the Court finds the Foundations have failed to satisfy the second prong of *Gentile:* "the exchange causes an increase in the percentage of the outstanding shares owned by the controlling stockholder, and a corresponding decrease in the share percentage owned by the public (minority) shareholders" *Gentile,* 906 A.2d at 100.

This is because plaintiffs must further show the benefit received by the controlling stockholder was an exclusive one. The Delaware Court of Chancery has per-

---

5. Alan Frazier is apparently the "General Partner and Founder" of Frazier Healthcare Ventures, the parent of the Frazier Investor entities. Pls.' 2d Am. Compl. [# 51–5], Ex. 5.

suasively explained, "the harm *Gentile* ... seek[s] to remedy can only arise when a controlling stockholder," with sufficient power to manipulate the corporate processes, engineers a dilutive transaction whereby that stockholder receives an *exclusive benefit* of increased equity ownership and voting power for inadequate consideration. *Feldman v. Cutaia,* 956 A.2d 644, 657 (Del.Ch.2007) (emphasis added), *aff'd* 951 A.2d 727. Although the Foundations argue this was dicta, the Chancery Court in fact made clear it was an independent and sufficient basis for finding the plaintiff had failed to make a direct claim.

> Indeed, it is apparent that a great number of stockholders other than the Telx directors and their affiliates purchased notes in the private placement, and reasonable to infer that the same opportunity was available to Feldman.
>
> . . . .
>
> The complaint, therefore, does not adequately allege that the Telx directors received an exclusive benefit from the Dilutive Transactions.

*Id.* at 658–59.

The Foundations argue *Feldman* is incorrect, and rely on an unpublished Delaware Court of Chancery case which declined to follow it. *Dubroff v. Wren Holdings, LLC,* Nos. 3940–VCN, 6017–VCN, 2011 WL 5137175 at *8 (Del.Ch. Oct. 28, 2011) (unpublished) ("Although some Delaware courts have used the word "exclusive," or its equivalent, in discussing direct equity dilution claims, the syllogism—if anyone other than the controller benefits from the transaction, then the minority may not assert a direct equity dilution claim—is much too simplistic"). However, the Court finds *Dubroff* unpersuasive for two reasons: first, it characterized "exclusive" to disallow "anyone other than the controller" to benefit from the transaction in question. The Court does not read *Feldman* so broadly. Rather, as the Court reads it, *Feldman* suggests the focus is on the plaintiff: was the plaintiff permitted to participate?

Second, to apply the *Gentile* rule as broadly as *Dubroff* has done would essentially destroy the derivative—direct distinction in equity dilution claims cases such as this, because, given the complexities of modern corporate ownership and finance, it will very often be the case that some shareholders see their equity diluted when corporate debt is converted to equity. And, probably even in a majority of cases, controlling shareholders and their nominee directors will be among those whose debt is increased to equity. The broad holding in *Dubroff* would subject those shareholders and directors to post-merger, direct claims in almost every instance, and would transform debt-to-equity conversions, a standard and normally legitimate corporate practice, into minefields of *Gentile* liability. This appears to be contrary to long-standing Delaware Supreme Court precedent, which repeatedly affirms that the merger event essentially ends such claims, absent certain narrow exceptions. *See Lewis,* 477 A.2d at 1049. Accordingly, the Court finds the Foundations must show they were excluded from the benefit obtained by the Frazier Investors and Directors, to state a claim under *Gentile.*

Here, the Foundations admit (1) the Foundations were offered the opportunity to participate in the full, $18 million investment amount, on a pro-rata basis; and (2) three other shareholders—Mayo Clinic, CMC Master Fund, and Ascension's founder, Dr. Jerome Klawitter—indeed did participate in the bridge financing and subsequent stock issuances.[6] Pls.' Supp.

---

**6.** Although it appears the Foundations were

not given the opportunity to loan money to

Mem. [# 64–1] at 2. As such, the Foundations have failed to state a claim under *Gentile* and its progeny, because they have not, and cannot, allege they were excluded from any benefit: they could have participated, but chose not to. Any claims are therefore derivative in nature, and cannot be brought, because the Foundations no longer have standing to bring derivative claims on Ascension's behalf. *See Feldman,* 956 A.2d at 659. The Court therefore GRANTS Defendants' motions to dismiss as to the breach of fiduciary duty claims, and aiding and abetting claims, and DISMISSES them WITH PREJUDICE.

### Conclusion

Accordingly,

IT IS ORDERED that Plaintiffs Chambers Medical Foundation, and Joe W. and Dorothy Dorsett Brown Foundation's Motion for Leave to File Supplemental Memorandum [# 64] is GRANTED;

IT IS FURTHER ORDERED that Plaintiffs' Motion for Leave to File Surreply [# 70] is GRANTED;

IT IS FURTHER ORDERED that Plaintiffs' Motion to Abate Scheduling Order Deadlines [# 74] is DISMISSED as MOOT;

IT IS FURTHER ORDERED that Defendants Nathan Every, Alan Frazier, Guy Mayer, Trevor Moody, Jeffrey Nugent, and Steven Tallman's Motion to Dismiss [# 54] is GRANTED;

IT IS FURTHER ORDERED that Defendants Frazier Affiliates III, L.P., Frazier Healthcare III, L.P., and Frazier Healthcare V, L.P.'s Motion to Dismiss [# 55] is GRANTED;

IT IS FINALLY ORDERED that Plaintiffs' claims are all DISMISSED WITH PREJUDICE.

Ascension under the bridge financing arrangements, they admit they were offered the chance to participate in the complained-of issuance of E Series stocks. This is crucial because it shows they would have participated in the proceeds of the merger, on a pro rata basis under the prior percentage of stock ownership, had they chosen to participate in the E Series issuance.