STRINE, Chief Justice,
concurring:
I join fully in the majority’s well-reasoned opinion. I write separately just to highlight a reality that this case exemplifies. Gentile v. Rossette[1] is a confusing decision, which muddies the clarity of our law in an important context. As the majority opinion makes clear, a claim that an entity has issued equity in exchange for inadequate consideration—a so-called dilution claim—is a quintessential example of a derivative claim.[2] But, Gentile purported *1266 to recognize a direct dilution claim when additional equity was issued to a company’s CEO who was already the controlling stockholder.[3] The reasoning was that this diminution in the voting power of minority stockholders somehow gave rise to a direct injury even though they were already stockholders in a controlled company.
But, that decision is difficult to reconcile with traditional doctrine. All dilution claims involve, by definition, dilution. To suggest that, in any situation where other investors have less voting power after a dilutive transaction, a direct claim also exists turns the most traditional type of derivative claim—an argument that the entity got too little value in exchange for shares—into one always able to be prosecuted directly. Gentile cannot be reconciled with the strong weight of our precedent and it ought to be overruled, to the extent that it allows for a direct claim in the dilution context when the issuance of stock does not involve subjecting an entity whose voting power was held by a diversified group of public equity holders to the control of a particular interest. But, even in that situation, there is no gap in our law for Gentile to fill. Revlon[4] already accords a direct claim to stockholders when a transaction shifts control of a company from a diversified investor base to a single controlling stockholder.[5] I agree with the majority that this case does not require us to consider Gentile’s ongoing viability in the corporate law context. Sufficient for today is that we refuse to extend Gentile further, to a situation where a limited partnership was already firmly under the control of the general partner and where the transaction under attack had no effect whatsoever on limited partner voting rights. But, by refusing to extend Gentile to the alternative entity arena, we implicitly recognize that Gentile undercuts the clarity and coherence that Tooley brought to the determination of what claims are derivative. The lucid majority decision therefore is a big step in the right direction.

. 906 A.2d 91 (Del. 2006).

. See, e.g., Green v. LocatePlus Holdings, Corp., 2009 WL 1478553, at *2 (Del. Ch. May 15, 2009) ("Classically, Delaware law has viewed as derivative claims by shareholders alleging that they have been wrongly diluted by a corporation's overpayment of shares.”); see also, e.g., Feldman v. Cutaia, 951 A.2d 727, 732-33 (2008); In re I.P. Morgan Chase & Co. S'holder Litig., 906 A.2d 766, 774-75 (2006).

. Gentile, 906 A.2d at 99.

. Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc., 506 A.2d 173 (Del. 1986).

.See Paramount Commc’ns Inc. v. QVC Network Inc., 637 A.2d 34, 43 (Del. 1994).