# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| PATRICK DAUGHERTY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JAMES DONDERO, THE VOTING )<br>TRUST, THE SLHC TRUST, MARK )<br>OKADA, THE MARK AND PAMELA )<br>OKADA FAMILY TRUST-EXEMPT )<br>DESCENDANTS TRUST, JOHN )<br>HOLT, TED MAERIS, KENNETH )<br>HANKS, and BRICE TARZWELL, )<br>)<br>Defendants. ) | C.A. No. 2019-0101-KSJM |

## ORDER GRANTING MOTION TO DISMISS

1. Plaintiff Patrick Daugherty owns common stock of non-party NexBank Capital, Inc. ("NexBank"). On February 11, 2019, he filed this action against the members of NexBank's board of directors, including James Dondero and Mark Okada. Directly and indirectly through trusts, Dondero owns over 65% and Okada owns over 18% of NexBank's outstanding common stock. Collectively, Dondero, Okada, and their trusts own approximately 85% of NexBank's outstanding common stock. Daugherty alleges that Dondero, Okada, and their trusts comprise a control group with concomitant fiduciary obligations to the minority stockholders of

1

NexBank.[1]  For the purposes of the instant motion, Defendants do not dispute that allegation, and thus this Order refers to Dondero, Okada, and their trusts collectively as the "Controlling Stockholders."[2]

2.     Through his Verified Complaint (the "Complaint"), Daugherty takes issue with 2016 and 2017 stock offerings (the "Stock Offerings") that were offered at an allegedly discounted price to participants.  Daugherty couples his challenge to the Stock Offerings with allegations concerning a loan program (the "Loan Program") that NexBank adopted in 2016 to provide directors and officers non-recourse loans to cover pass-through tax liability for their NexBank shares.  Concerning the Loan Program, Daugherty alleges that during the year of the 2016 Stock Offering, NexBank's balance of funded loans increased by $5,040,000, and in the year of the 2017 Stock Offering, additional loans totaling $2,398,000 were funded.  The Loan Program was discontinued in 2017, and NexBank disclosed that it was contemplating forgiveness of the balances of the loans as of December 31, 2016.  Daugherty alleges, and it is reasonable to infer, that the purpose of the Loan Program was to make the Stock Offerings more economically attractive to directors

[1] See C.A. No. 2019-0101-KSJM Docket ("Dkt.") 1, Verified Compl. ("Compl.") ¶ 5.

[2] See Dkt. 26, Opening Br. in Supp. of Mot. to Dismiss Pl.'s Verified Compl. for Breach of Fiduciary Duties ("Defs.' Opening Br.") at 4, 7, 21, 30, 34, and 38.

2

and officers eligible to participate in the Loan Program, including Dondero and Okada.

3.      Conversely, the Stock Offerings were less economically attractive to minority stockholders, like Daugherty, who were ineligible for the Loan Program. Daugherty knew of the Stock Offerings and was eligible to participate on terms equal to all other stockholders, but declined to participate due to the pass-through tax liability additional stock ownership would impose, and because he was not eligible to participate in the Loan Program. Because of the Stock Offerings, his voting and economic interest in NexBank decreased from 1.66% to 1.31%, and the Controlling Stockholders economic and voting interest in NexBank increased from 85.32% to 85.72%.

4.      The Complaint asserts two Counts, each arising from the dilution of Daugherty's equity and voting interests. Count I claims that the Controlling Stockholders breached their fiduciary duties as controllers. Count II claims that the NexBank board members named as defendants breached their fiduciary duties as directors. This Order refers to the two Counts collectively as the "dilution claims."

5.      The defendants have moved to dismiss the dilution claims pursuant to Court of Chancery Rule 12(b)(6). On a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts "all well-pleaded factual allegations in the Complaint as true, [and] accept[s] even vague allegations in the Complaint as 'well-pleaded' if they provide

3

the defendant notice of the claim."[3] "A trial court is not, however, required to accept as true conclusory allegations 'without specific supporting factual allegations.'"[4] The Court "draw[s] all reasonable inferences in favor of the plaintiff, and den[ies] the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[5]

6. The defendants assert multiple arguments in support of dismissal, but only one is pertinent to the disposition of this case. The defendants contend that the dilution claims are derivative in nature and should fail because Daugherty makes no effort to satisfy the demand futility requirements for pleading a derivative claim. Daugherty asserts that the dilution claims can be brought directly within the transactional paradigm under *Gentile v. Rossette*,[6] but he has not argued in the alternative that demand would be futile if the Court finds that his claims are, in fact, derivative in nature.

7. In *Gentile*, the Delaware Supreme Court recognized "a species of corporate overpayment claim" that a stockholder can assert both derivatively *and* directly:

---

[3] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[4] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (quoting *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 65–66 (Del. 1995)).

[5] *Cent. Mortg.*, 27 A.3d at 536 (citing *Savor*, 812 A.2d at 897).

[6] 906 A.2d 91 (Del. 2006).

4

A breach of fiduciary duty claim having this dual character arises where: (1) a stockholder having majority or effective control causes the corporation to issue "excessive" shares of its stock in exchange for assets of the controlling stockholder that have a lesser value; and (2) the exchange causes an increase in the percentage of the outstanding shares owned by the controlling stockholder, and a corresponding decrease in the share percentage owned by the public (minority) shareholders. Because the means used to achieve that result is an overpayment (or "over-issuance") of shares to the controlling stockholder, the corporation is harmed and has a claim to compel the restoration of the value of the overpayment. That claim, by definition, is derivative.

But, the public (or minority) stockholders also have a separate, and direct, claim arising out of the same transaction. Because the shares representing the "overpayment" embody both economic value and voting power, the end result of this type of transaction is an improper transfer—or expropriation—of economic value and voting power from the public shareholders to the majority or controlling stockholder. For that reason, the harm resulting from the overpayment is not confined to an equal dilution of the economic value and voting power of each of the corporation's outstanding shares. A separate harm also results: an extraction from the public shareholder, and a redistribution to the controlling shareholder, of a portion of the economic value and voting power embodies in the minority interest. As a consequence, the public shareholders are harmed, uniquely and individually, to the same extent that the controlling shareholder is (correspondingly) benefited.[7]

8.     Put differently, "the harm *Gentile* seeks to remedy arises 'when a controlling stockholder, with sufficient power to manipulate the corporate processes,

---

[7] *Id.* at 99–100.

5

engineers a dilutive transaction whereby that stockholder receives an exclusive benefit of increased equity ownership and voting power for inadequate consideration.'"[8]

9.     The Delaware Supreme Court narrowly construed the *Gentile* doctrine in *El Paso Pipeline GP Co. v. Brinckerhoff*.[9]   In that case, a limited partner challenged alleged overpayments to a controller that reduced the limited partners' economic interests but not their voting rights.[10] The Court distinguished the facts of *Gentile*, where the challenged transactions "resulted in an improper transfer of both economic *and* voting power from the minority stockholders to the controlling stockholder,"[11] and declined to apply *Gentile* on this basis.  In a concurring opinion, the Chief Justice urged his colleagues to overrule *Gentile*.[12]  Consequently, "[i]n the wake of *El Paso*, [the Court of Chancery] has exercised caution in applying the *Gentile* framework, commenting in one case that '[w]hether *Gentile* is still good law is debatable' and finding in another that '*Gentile* must be limited to its facts.'"[13]

---

[8] *Klein v. H.I.G. Capital, L.L.C.*, 2018 WL 6719717, at *6 (Del. Ch. Dec. 19, 2018) (quoting *Feldman v. Cutaia*, 956 A.2d 644, 657 (Del. Ch. 2007), *aff'd*, 951 A.2d 727 (Del. 2008)).

[9] 152 A.3d 1248 (Del. 2016).

[10] *Id.* at 1264.

[11] *Id.* at 1263 (emphasis in original).

[12] *Id.* at 1266 (Strine, C.J., concurring).

[13] *Klein*, 2018 WL 6719717, at *7 (first quoting *ACP Master, Ltd. v. Sprint Corp.*, 2017 WL 3421142, at *26 n.206 (Del. Ch. July 21, 2017), *aff'd*, 2018 WL 1905256 (Del.

6

10. Applying this framework, the Complaint fails to state a claim under *Gentile* as to the 2016 Stock Offering. For a dilution claim to meet the narrow criteria of *Gentile*, a controller must extract a benefit from the challenged transaction. "As such, a transaction does not fit within the *Gentile* paradigm if the controller itself is diluted by the transaction."[14] Accepting the allegations in the Complaint as true, the Controlling Stockholders' positions *decreased* as a result of the 2016 Stock Offering from 85.32% to 84.94%. It was only after the 2017 Stock Offering that the Controlling Stockholders' net equity and voting positions increased. Any challenge to the 2016 Stock Offering thus fails because the Controlling Stockholders were diluted in the transaction.

11. The Complaint also fails to state a claim under *Gentile* as to the 2017 Stock Offering, even though it resulted in a marginal increase to the Controlling Stockholders' net equity and voting positions. This is so because *Gentile* and its progeny require that the expropriated benefit inure *exclusively* to the controllers.[15]

---

Apr. 23, 2018); then quoting *Almond for Almond Family 2001 Tr. v. Glenhill Advisors LLC*, 2018 WL 3954733, at *24 (Del. Ch. Aug. 17, 2018)).

[14] *Glenhill*, 2018 WL 3954733, at *28 (citing *Dubroff v. Wren Hldgs.*, 2011 WL 5137175, at *9 (Del. Ch. Oct. 28, 2011)); *see also Dubroff*, 2011 WL 5137175, at *9 ("[M]inority shareholders may have a direct equity dilution claim when their holdings are diluted, and those of the corporation's controller are not.").

[15] *Gentile*, 906 A.2d at 94–95 (involving a transaction where controller was sole recipient of extracted benefit); *Feldman*, 956 A.2d at 657 (articulating the *Gentile* standard as requiring controller to receive an "*exclusive* benefit of increased equity ownership and voting power for inadequate consideration" (emphasis added)); *Klein*, 2018 WL 6719717, at *6 (quoting "exclusive benefit" language of *Feldman*); *Glenhill Advisors*, 2018

7

Cases interpreting this exclusivity requirement have found it lacking where all stockholders are equally eligible to participate in the challenged transaction.[16] In this case, Daugherty concedes that he and all other minority stockholders had the opportunity to participate in the Stock Offerings. Accordingly, *Gentile* does not apply.[17]

12. The side-benefit of the Loan Program does not change this analysis. Daugherty argues that the Loan Program commenced in tandem with the Stock Offerings as part of a greater scheme to benefit the Controlling Stockholders. But the benefits of the Loan Program were extended to all NexBank directors and officers, not just the Controlling Stockholders. And as discussed, the Loan Program actually served to dilute the Controlling Stockholders in 2016. Thus, the Loan Program does not extend an exclusive benefit to the Controlling Stockholders in isolation or conjunction with the Stock Offerings.

---

WL 3954733, at *28 (same); *Sciabacucchi v. Liberty Broadband Corp.*, 2018 WL 3599997, at *7 (Del. Ch. July 26, 2018) (same).

[16] *See, e.g.*, *Feldman*, 956 A.2d at 658 (noting that plaintiff does not allege "that he, or any other person who was a [minority] stockholder at the time, was barred from participating"); *Sheldon v. Pinto Tech. Ventures, L.P.*, 2019 WL 336985, at *9 (Del. Ch. Jan. 25, 2019) (noting that the alleged controllers "were not the only participants in the [challenged financing rounds]"); *Bomberger v. Benchmark Builders, Inc.*, 2016 WL 4411527, at *3 (Del. Ch. Aug. 19, 2016) (noting that plaintiff's complaint conceded that plaintiff "was given the opportunity to participate in [the company's] subsequent equity offerings").

[17] This reasoning also provides an alternative basis for dismissing claims challenging the 2016 Stock Offering.

13. In the end, Daugherty's dilution claims challenging the Stock Offerings are classic derivative overpayment claims. Because Daugherty does not attempt to meet the requirements for pleading a derivative claim, the dilution claims are dismissed.

14. For the foregoing reasons, Defendants' motion to dismiss the Complaint is GRANTED with prejudice.

Vice Chancellor Kathaleen St. J. McCormick
Dated: September 27, 2019

9