**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

DR. THOMAS MARKUSIC, DR. MAXYM POLYAKOV, NOOSPHERE VENTURE PARTNERS, LP, and FIREFLY AEROSPACE, INC.,

        Plaintiffs,

        v.

MICHAEL BLUM, PATRICK JOSEPH KING, LAUREN MCCOLLUM, STEVEN BEGLEITER, GREEN DESERT N.V., SWING INVESTMENTS BVBA, BRIGHT SUCCESS CAPITAL LTDL, and WUNDERKIND SPACE LTD.,

        Defendants.

_____

MICHAEL BLUM, PATRICK JOSEPH KING, LAUREN MCCOLLUM, STEVEN BEGLEITER, GREEN DESERT N.V., SWING INVESTMENTS BVBA, BRIGHT SUCCESS CAPITAL LTD., and WUNDERKIND SPACE LTD.,

        Counterclaim-Plaintiffs,

        v.

DR. THOMAS MARKUSIC, DR. MAXYM POLYAKOV, MARK WATT, NOOSPHERE VENTURE PARTNERS, LP, and FIREFLY AEROSPACE, INC.,

        Counterclaim-Defendants.

)
)
)
)
)
)
)
)
)
)
) C.A. No. 2019-0753-KSJM
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

## ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS[1]

1.      Firefly Space Systems, Inc. ("Original Firefly") was an aerospace startup founded in late 2013 by Michael Blum, Patrick Joseph King, and Thomas Markusic to launch small-load rockets into orbit. Counterclaim-Plaintiffs Blum, King, Lauren McCollum, Steven Begleiter, Green Desert N.V., Swing Investments BVBA, Bright Success Capital Ltd., and Wunderkind Space Ltd. (collectively, "Original Firefly Investors") all owned stock in Original Firefly. Markusic was the CEO and sole board member of Original Firefly at all relevant times.

2.      In June 2015, Original Firefly raised approximately $1 million in funding from Space Florida, the aerospace economic development agency of the State of Florida, in the form of a convertible note (the "Space Florida Note"). The Space Florida Note was senior to all other Original Firefly debt, and it could not be assigned to another lender without Original Firefly's consent.

3.      In October 2016, Original Firefly raised another $1.5 million in debt financing from FITA, Inc., an entity controlled by one of Original Firefly's investors (the "FITA Note"). The FITA Note served as a bridge loan while Original Firefly worked to conclude its Series A funding round. The FITA Note was senior to the Original Firefly Investors' own investments in Original Firefly.

---

[1] The facts are drawn from the Verified Counterclaims. C.A. No. 2019-0753-KSJM, Docket ("Dkt.") 3, Defs.' Answer to Compl. for Declaratory J., Affirmative Defenses, & Verified Countercls. ("Countercls.").

2

4. On October 16, 2016, Original Firefly entered into a confidentiality agreement (the "Confidentiality Agreement") with another prospective investor, Noosphere Venture Partners, LP. ("Noosphere"). Noosphere's CEO, Maxym Polyakov, then visited Original Firefly's facilities in Texas. After the visit, Polyakov and his partner, Mark Watt, sent Markusic a summary of Noosphere's proposed next steps regarding an investment in Original Firefly. Over the next month, Markusic negotiated with Polyakov regarding Noosphere's investment.

5. On November 29, 2016, Noosphere presented a proposed term sheet for a convertible note financing. The Original Firefly Investors and Markusic believed this proposal "substantially undervalued" their Original Firefly equity.[2] Markusic told the Original Firefly Investors that he would continue negotiating with Noosphere.

6. By December 2016, Noosphere had shifted gears from negotiating a new convertible note financing to acquiring portions of Original Firefly's existing debt. The Original Firefly Investors allege that Markusic encouraged this change of plans, helping Polyakov, Watt, and Noosphere to "identify and target outstanding debt held by creditors that would be ripe for foreclosure."[3] The Original Firefly

---

[2] *Id.* ¶ 24.

[3] *Id.* ¶ 25.

3

Investors also allege that at this time, Markusic began negotiating his own employment with Noosphere.

7.      On January 11, 2017, Polyakov, Watt, and Noosphere renewed their proposal to acquire Original Firefly's existing senior debt. This time, Markusic supported their proposal. On January 27, 2017, Markusic announced an intent to travel to Ukraine "to determine firsthand what capabilities Polyakov's companies had and to solicit further strategic investment from Polyakov that would purportedly benefit Original Firefly."[4] Also on January 27, 2017, Polyakov incorporated a company named EOS in Delaware.

8.      On February 10, 2017, EOS purchased the FITA Note. After becoming aware of this transaction, the Original Firefly Investors "actively voiced their disapproval and concerns."[5] On February 14, 2017, EOS purchased the Space Florida Note. The Original Firefly Investors allege that Markusic approved the assignment of the Space Florida Note to EOS in his capacity as the sole director of Original Firefly. Markusic did not obtain the approval of the Original Firefly Investors or any other Original Firefly stockholders, which the Original Firefly Investors allege was required.

---

[4] *Id.* ¶ 28.

[5] *Id.* ¶ 33.

4

9.      Shortly after acquiring the FITA Note and Space Florida Note, EOS foreclosed on both loans.   The Original Firefly Investors then demanded that Markusic cause Original Firefly to voluntarily file for bankruptcy "so that a bankruptcy trustee could manage the sale of Original Firefly's assets and protect it from the selective foreclosure process."[6]  Instead, Markusic scheduled a foreclosure auction of Original Firefly's assets for March 16, 2017, but took "minimal action" to organize it.[7]  The Original Firefly Investors notified media outlets and potential bidders, but the auction was not widely publicized.  EOS carried out the auction and also purchased every asset up for sale, including Original Firefly's intellectual property.   After the auction, Original Firefly had very few assets.   It filed for Chapter 7 bankruptcy protection and went out of business.  In a subsequent auction run by a bankruptcy trustee, EOS purchased Original Firefly's remaining assets.

10.     On March 24, 2017, EOS changed its name to Firefly Aerospace, Inc. ("New Firefly") and appointed Markusic as its CEO.  Markusic's compensation and equity interests in his new role are "far greater" than his interests in Original Firefly.[8]

11.     On September 19, 2019, New Firefly and its management and investors, Markusic, Polyakov, and Noosphere, filed this litigation seeking a declaratory

---

[6] *Id.* ¶ 36.

[7] *Id.* ¶ 38.

[8] *Id.* ¶ 41.

judgment that Markusic did not breach his fiduciary duties and that Polyakov, Noosphere, and New Firefly did not aid and abet any alleged breaches.[9] On November 22, 2019, the Original Firefly Investors answered the complaint and filed counterclaims against the plaintiffs and Watt (collectively, the "New Firefly Contingent").[10] On February 7, 2020, the New Firefly Contingent moved to dismiss the Counterclaims.[11] The parties fully briefed the motion,[12] and the Court held oral argument on June 25, 2020.

12. The Original Firefly Investors assert five causes of action, which this decision refers to as Counterclaims I through V:

- Counterclaim I claims that Markusic breached his fiduciary duty of loyalty.

- Counterclaim II claims that Polyakov, Watt, Noosphere, and New Firefly aided and abetted in Markusic's breaches of fiduciary duty.

- Counterclaim III claims that Noosphere breached the Confidentiality Agreement by misusing Original Firefly's confidential information to engineer a takeover of Original Firefly rather than to invest in Original Firefly.

---

[9] Dkt. 1, Compl. for Declaratory J.

[10] Countercls.

[11] Dkt. 5, Pls.' Mot. to Dismiss Defs.' Countercls.

[12] Dkt. 15, Pls.' Mot. to Dismiss Defs.' Countercls. Pursuant to Ct. of Chancery Rules 12(b)(1) & 23.1; Dkt. 17, Def./Counter-Pls.' Answering Br. in Opp'n to Mot. to Dismiss ("Answering Br."); Dkt. 18, Pls.' Reply Br. in Further Supp. of Their Mots. to Dismiss ("Reply Br.").

- Counterclaim IV claims that Markusic, Polyakov, Watt, and New Firefly tortiously interfered with the Confidentiality Agreement by causing Noosphere's breach.

- Counterclaim V claims that Polyakov, Watt, Noosphere, and New Firefly tortiously interfered with the Original Firefly Investors' prospective economic advantage by disrupting their business relationship with Original Firefly.

## LEGAL ANALYSIS

13. The New Firefly Contingent has moved to dismiss the Counterclaims. They contend that Counterclaims I, II, III, and IV are derivative in nature, that the claims were not assigned to the Original Firefly Investors by the bankruptcy court, and thus, the Original Firefly Investors lack standing. They also contend that Counterclaim V fails to state a claim upon which relief can be granted.

14. The Original Firefly Investors respond that their fiduciary duty claims in Counterclaims I and II are direct in nature and that they state a claim upon which relief can be granted. They concede that Counts III and IV are derivative but argue that the bankruptcy did not affect those claims and that they have adequately pleaded demand futility. They last argue that Count V states a claim upon which relief can be granted.

15. Under Rule 12(b)(6), the Court may grant a motion to dismiss if the complaint "fail[s] to state a claim upon which relief can be granted."[13] "[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'"[14] When considering such a motion, the Court must "accept all well-pleaded factual allegations in the [c]omplaint as true . . . , draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[15] The Court, however, need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[16]

16. In Counterclaim I, the Original Firefly Investors allege that Markusic owed fiduciary duties as CEO of Original Firefly and that he breached those duties by "leverag[ing] his control over [Original] Firefly's assets to secure a deal for himself with Polyakov, Watt, and Noosphere."[17] In Counterclaim II, Counterclaim-

---

[13] Ct. Ch. R. 12(b)(6); *see also Dover Historical Soc. v. City of Dover Planning Comm'n*, 838 A.2d 1103, 1110 (Del. 2003) (evaluating standing argument under Ct. Ch. R. 12(b)((6)).

[14] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 537 (Del. 2011).

[15] *Id.* at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[16] *Price v. E.I. du Pont de Nemours Co., Inc.*, 26 A.3d 162, 166 (Del. 2011) (citing *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009)).

[17] Answering Br. at 15.

Plaintiffs allege that Polyakov, Watt, Noosphere, and New Firefly aided and abetted Markusic's alleged breaches in Counterclaim I. The Original Firefly Investors argue that their claims are direct in nature because they suffered a "special injury distinct from that suffered by [Original Firefly] or the stockholder group as a whole."[18] They argue under the Court's *Gentile* paradigm that Markusic "effectively controlled" Original Firefly and that he exploited this control to expropriate all economic value and voting power from the Original Firefly Investors for himself.[19]

17. The Original Firefly Investors' reliance on *Gentile* is misplaced. In *Gentile*, the Delaware Supreme Court recognized "a species of corporate overpayment claim" that a stockholder can assert both derivatively and directly.[20] The Supreme Court held that breach of fiduciary claims may take on this dual character where:

> (1) a stockholder having majority or effective control causes the corporation to issue "excessive" shares of its stock in exchange for assets of the controlling stockholder that have a lesser value; and (2) the exchange causes an increase in the percentage of the outstanding shares owned by the controlling stockholder, and a corresponding decrease in the share percentage owned by the public (minority) shareholders.[21]

---

[18] *Id.* at 17 (quoting *Odyssey P'rs v. Fleming Co.*, 1998 WL 155543, at *3 (Del. Ch. Mar. 27, 1998)).

[19] *Id.* at 15.

[20] *Gentile v. Rosette*, 906 A.2d 91, 99 (Del. 2006).

[21] *Id.* at 100.

The Court concluded that in these instances, "the public shareholders are harmed, uniquely and individually, to the same extent that the controlling shareholder is (correspondingly) benefitted."[22] Put differently, "the harm *Gentile* seeks to remedy arises 'when a controlling stockholder, with sufficient power to manipulate the corporate processes, engineers a dilutive transaction whereby that stockholder receives an exclusive benefit of increased equity ownership and voting power for inadequate consideration.'"[23]

18. The Delaware Supreme Court has since narrowly construed the *Gentile* doctrine in *El Paso Pipeline GP v. Brinckerhoff*.[24] In that case, a limited partner challenged alleged overpayments to a controller that reduced the limited partners' economic interests but not their voting rights.[25] The Court distinguished the facts of *Gentile* and declined to apply its holding where the challenged transactions did not "result[] in an improper transfer of both economic *and* voting power from the minority stockholders to the controlling stockholder."[26]

---

[22] *Id.*

[23] *Klein v. H.I.G. Capital, L.L.C.*, 2018 WL 6719717, at *6 (Del. Ch. Dec. 19, 2018) (quoting *Feldman v. Cutaia*, 956 A.2d 644, 657 (Del. Ch. 2007), *aff'd*, 951 A.2d 727 (Del. 2008)).

[24] 152 A.3d 1248 (Del. 2016).

[25] *Id.* at 1264.

[26] *Id.* at 1263. In a concurring opinion, then-Chief Justice Strine urged his colleagues to overrule *Gentile*. *Id.* at 1266 (Strine, C.J., concurring). Consequently, "[i]n the wake of *El Paso*, [the Court of Chancery] has exercised caution in applying the *Gentile* framework, commenting in one case that '[w]hether *Gentile* is still good law is debatable' and finding

10

19.     The facts of this case do not fit the mold of *Gentile* as set by *El Paso*. The Original Firefly Investors more or less complain that Markusic approved transactions that depleted the economic value of Original Firefly for Markusic's own benefit. They do not allege any dilution or loss of voting rights. Our Supreme Court has "decline[d] the invitation to further expand the universe of claims that can be asserted 'dually'" to include solely "the extraction of solely economic value from the minority by a controlling stockholder."[27]  Thus, the Original Firefly Investors' claims are derivative in nature.[28]

20.     Upon commencement of Chapter 7 bankruptcy proceedings, derivative claims "become the property of the bankruptcy estate and subject to the control of the [b]ankruptcy [c]ourt."[29]  "Upon the filing of a bankruptcy petition . . . , any claims for injury to the debtor from actionable wrongs committed by the debtor's

---

in another that '*Gentile* must be limited to its facts.'" *Klein*, 2018 WL 6719717, at *7 (first quoting *ACP Master, Ltd. v. Sprint Corp.*, 2017 WL 3421142, at *26 n.206 (Del. Ch. July 21, 2017), *aff'd*, 184 A.3d 1291 (Del. 2018) (TABLE); then quoting *Almond for Almond Family 2001 Tr. v. Glenhill Advisors LLC*, 2018 WL 3954733, at *24 (Del. Ch. Aug. 17, 2018), *aff'd*, 224 A.2d 200 (Del. 2019) (TABLE)).

[27] *El Paso*, 152 A.3d at 1264.

[28] The Original Firefly Investors do not address the Supreme Court's holding in *El Paso* and instead appeal to this Court's equitable inclinations to regard substance over form. *See* Answering Br. at 12–13 (citing *Gatz v. Ponsoldt*, 925 A.2d 1265 (Del. 2007)); *id.* at 14–15 (citing *Odyssey P'rs*, 1998 WL 155543).  All of the cases relied upon by the Original Firefly Investors pre-date *El Paso*.

[29] *Thornton v. Bernard Techs., Inc.*, 2009 WL 426179, at *3 (Del. Ch. Feb. 20, 2009); *see Police & Fire Ret. Sys. of City of Detroit v. Callen*, 44 A.3d 922 (Del. 2012) (TABLE) (confirming that *Thornton* is the "controlling rule of law").

11

officers and director become property of the estate under 11 U.S.C. § 541 and the right to bring a derivative action asserting such claims vests exclusively to the trustee."[30] "This is true regardless of whether the derivative action is brought prior to or after the filing of the petition."[31] Claims subject to the control of the bankruptcy trustee "must be dismissed unless the [p]laintiffs are able to demonstrate some authority to proceed in the [t]rustee's stead."[32] This delegation of authority requires a showing that "(1) that the bankruptcy trustee has affirmatively assigned or abandoned the claims to the [p]laintiffs and (2) the [b]ankruptcy [c]ourt approved of [p]laintiffs' prosecution of the claims in this Court."[33]

21. The Original Firefly Investors have neither pled that the bankruptcy trustee assigned them the authority to bring Counterclaims I and II nor that the bankruptcy court approved any such assignment. Counterclaims I and II must be dismissed because they are derivative, and the Original Firefly Investors do not have the authority to bring them on behalf of Original Firefly.[34]

---

[30] *In re RNI Wind Down Corp.*, 348 B.R. 286, 292 (Bankr. D. Del. 2006), *aff'd*, 359 F. App'x 352 (3d Cir. 2010); *see also Thornton*, 2009 WL 426179, at *3 & n.29 (collecting cases).

[31] *In re RNI Wind Down Corp.*, 348 B.R. at 293.

[32] *Thornton*, 2009 WL 426179, at *4.

[33] *Id.*

[34] The Original Firefly Investors argue instead that these claims were not "discharged" during Original Firefly's bankruptcy because they were never considered by the trustee. Answering Br. at 23. But the discharge doctrine in bankruptcy applies to *debts* of the

12

22.     In Counterclaim III, the Original Firefly Investors allege that Noosphere breached the Confidentiality Agreement by misusing Original Firefly's confidential information.  In Counterclaim IV, the Original Firefly Investors allege that Markusic, Polyakov, Watt, and New Firefly tortuously interfered with the Confidentiality Agreement.  The parties appear to agree that Counterclaims III and IV are derivative in nature.[35]  These claims thus must also be dismissed because the Original Firefly Investors neither allege that they were assigned the authority to bring these claims nor that the bankruptcy trustee approved any such assignment.

23.     In Counterclaim V, the Original Firefly Investors allege that Polyakov, Watt, Noosphere, and New Firefly tortiously interfered with their prospective economic advantage as stockholders of Original Firefly.  To state a claim for tortious interference with prospective economic advantage, a plaintiff must plead: "(a) the reasonable probability of a business opportunity, (b) the intentional interference by the defendant with that opportunity, (c) proximate causation, and (d) damages."[36]  To plead a reasonable probability of a business opportunity, a plaintiff "must identify a

---

bankruptcy estate.  *See* 11 U.S.C. § 727.  Derivative actions are assets of the estate, not debts.  The Original Firefly Investors' argument is thus inapposite.

[35] Answering Br. at 23, 26; Reply Br. at 15.

[36] *Organovo Hldgs., Inc. v. Dimitrov*, 162 A.3d 102, 122 (Del. Ch. 2017) (quoting *DeBonaventura v. Nationwide Mut. Ins. Co.*, 419 A.2d 942, 947 (Del. Ch. 1980)).  The parties dispute whether Delaware or California law applies to Counterclaim V, but the Original Firefly Investors' conclusory allegations fail to state a claim under either state's law.

specific party who was prepared to enter into a business relationship but was dissuaded from doing so by the defendant and cannot rely on generalized allegations of harm."[37]

24.     The Original Firefly Investors have not identified a party who was prepared to enter into a business relationship with them as stockholders of Original Firefly.   Their conclusory allegation that they "had an existing and prospective business with Original Firefly" does not suffice.[38] Counterclaim V is thus dismissed.

### CONCLUSION

25.     For the foregoing reasons, the motion to dismiss the counterclaims is granted in full.

/s/ Kathaleen St. J. McCormick
Vice Chancellor Kathaleen St. J. McCormick
Dated:  August 18, 2020

---

[37] *Id.* (quoting *Agilent Techs., Inc. v. Kirkland*, 2009 WL 119865, at *7 (Del. Ch. Jan. 20, 2009)).

[38] Countercls. ¶ 67.

14